**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TREMAYNE DURHAM**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NEW JERSEY STATE PRISON, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 23-12415 (RK) (RLS)**<br><br>**MEMORANDUM OPINION & ORDER** |

Plaintiff Tremayne Durham, a state prisoner proceeding *pro se*, has filed a Complaint raising federal and state law claims for relief arising from the alleged denial of the use of his cane in the mess hall at New Jersey State Prison ("NJSP") and the refusal to deliver meals to his housing unit. (ECF No. 1, Complaint.) Having granted Durham's application to proceed *in forma pauperis*, (ECF No. 3), the Court now screens the Complaint under 28 U.S.C. § 1915(e)(2)(B). For the reasons below, the Court will allow the Complaint to proceed in part and dismiss it in part.

## I. RELEVANT BACKGROUND AND ALLEGATIONS[1]

Durham is a frequent litigant in this District. By way of background, Durham was allegedly prescribed a walking cane following a diagnosis of lumbar stenosis and has filed a series of lawsuits in this District alleging that prison officials have violated his constitutional rights and failed to provide him with reasonable accommodations for his disability. In *Durham v. Kelley*, the Third Circuit held that Durham stated claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Eighth Amendment based on the denial of his cane and an

[1] The Court construes the well-pleaded factual allegations of the Complaint as true for the purpose of this Opinion. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

accessible shower in 2020. 82 F.4th 217, 225–30 (3d Cir. 2023) ("*Durham I*"). Similarly, this Court recently screened Durham's complaint concerning the NJSP yard, where NJSP staff prevented him from bringing his cane to the yard; Durham entered the yard without his cane, fell, and was allegedly injured. *Durham v. N.J. Dep't of Corr.*, Civ. No. 23-20485, 2026 WL 2937333 (D.N.J. Sept. 30, 2026) ("*Durham II*"). Another judge in this District also screened Durham's complaint concerning the NJSP gym; there, too, Durham was denied entry with his cane, entered without his cane, fell, and was allegedly injured. *Durham v. Gangi*, Civ. No. 24-16, 2026 WL 1430677 (D.N.J. May 21, 2026) ("*Durham III*").

Similar to Durham's other cases, this action arises from the alleged denial of the use of Durham's cane in the mess hall at NJSP and NJSP's refusal to deliver Durham's meals to his housing unit. Durham sues eleven defendants: NJSP; University Correctional Health Care ("UCHC"), NJSP's medical provider; Associate Administrator A. Gangi; Security Major C. Sears; Lieutenant M. Crawford; Dr. B. Staller; Advanced Practice Nurse ("APN") C. Teh; Officers J. Soto and W. Bradshaw; and two John Doe officers[2] for the alleged violations of his civil rights and his right to accommodation for his disability. (Complaint ¶¶ 4–15.) Durham was diagnosed with lumbar stenosis in 2018 and was issued a cane in November 2022. (*Id.* ¶¶ 16–17, 22, 40.)

In mid-2022, Durham began asking NJSP medical staff to have his meals delivered to his housing unit because canes were not allowed in the mess hall. (*Id.* ¶¶ 18–21, 36–39.) In July 2022, Durham told Dr. Staller, a medical doctor at NJSP, that he had been missing meals because of his pain and that canes were not allowed in the mess hall. (*Id.* ¶¶ 12, 21.) Dr. Staller allegedly responded, "I am not ordering meals on the tier for you[;] if I do it for you I have to do it for

[2] The Court refers to Associate Administrator Gangi, Major Sears, Lieutenant Crawford, Dr. Staller, APN Teh, Officer Soto, Officer Bradshaw, and the two John Doe officers as the "Individual Defendants."

everyone else, you will have to find some way to manage." (*Id.* ¶ 21.) In January 2023, Durham made the same request to APN Teh, who allegedly replied, "I will not do this, this is not a hotel this is prison." (*Id.* ¶ 36.) Durham drafted letters to UCHC requesting meals be delivered to his unit, but the letters went unanswered. (*Id.* ¶¶ 5, 20, 38–39.)

In December 2022, Durham filed an inquiry asking to use his cane in the mess hall; custody supervisor Lieutenant Crawford denied that request as "not possible based on security concerns," offering instead to move Durham to a double-lock unit where he would share a cell with another inmate. (*Id.* ¶¶ 23–30.) Associate Administrator Gangi denied Durham's appeal of this decision, stating, "take this up with medical and custody." (*Id.*)

Durham filed another grievance in February 2023. (*Id.* ¶¶ 33–35.) Again, Lieutenant Crawford responded that a cane was "not authorized" in the mess hall and that any "medical lay in for meals" would have to come through the medical department. (ECF No. 1-2 at 11; Complaint ¶¶ 33–35.) Durham replied that the medical department had already denied his request, and Associate Administrator Gangi then upheld that denial for "safety and security reasons." (ECF No. 1-2 at 11; Complaint ¶¶ 33–35.)

On May 28, 2023, Durham allegedly attempted to enter the mess hall with his cane, and Officers Soto, Bradshaw, and two John Doe officers each told him that no canes were allowed in the mess hall. (Complaint ¶¶ 41–44, 46–48.) In response, Durham allegedly stated loudly that he had "a serious back condition and need[ed] [his] cane to walk," but Soto told him, "that[']s the policy[,] no canes allowed in the messhall." (*Id.* ¶¶ 45, 47.) Durham returned his cane to his housing unit and entered the mess hall without it, where he then experienced excruciating lower back pain that radiated to his legs and, with nothing to support him, fell to the floor. (*Id.* ¶¶ 49–

50.) He was taken by stretcher to the clinic, treated, and admitted to the infirmary for approximately three days. (*Id.* ¶¶ 51, 53; ECF No. 1-2 at 15–16.)

After the fall, Durham renewed his requests. UCHC responded that "this is not a medical issue" and that Durham should "forward this request to [the Department of Corrections], as we do not create the polic[i]es or rules for the building." (Complaint ¶ 54; ECF No. 1-2 at 17.) Major Sears responded to Durham's renewed grievance, writing that canes would not be allowed in the mess hall but that "[i]f you can not walk to and from the Mess hall without the use of a cane then your meals will be brought to your unit." (ECF No. 1-2 at 18; Complaint ¶¶ 55–56.) According to Durham, however, the meals never came. (Complaint ¶¶ 57, 71, 99.) Durham alleges that he missed around 95 meals between January 2023 and the filing of the Complaint in August 2023—losing around 40 pounds—while other inmates on his housing unit, including one who also walks with a cane, had their meals delivered. (*Id.* ¶¶ 25–26, 59–60, 71; ECF No. 1-2 at 19.)

The Complaint includes nine counts, seeking damages, as well as declaratory and injunctive relief:

- Count One: claims under the ADA, 42 U.S.C. § 12131 et seq., and RA, 29 U.S.C. § 794, against NJSP and UCHC;
- Counts Two and Three: claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause and the Eighth Amendment; and
- Counts Four through Nine: state law claims for negligent infliction of emotional distress, "intentional or malicious harm to another," negligence, medical malpractice, "careless contractual work injuring other[s]," and violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq. (Complaint ¶¶ 67–115.)

Pro bono counsel was appointed and later relieved at Durham's request. (ECF Nos. 6, 7.) The matter was reassigned to the undersigned in March 2026 and administratively terminated pending screening. (ECF No. 8.)

## II. DISCUSSION

### A. Standard of Review

Federal law requires this Court to screen Durham's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim that fails to state a claim upon which relief may be granted and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). To survive screening, Durham's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Conclusory allegations do not suffice. *See id.* Because Durham is proceeding *pro se*, the Court construes his allegations liberally. *See Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

### B. The ADA and RA Claims

The Court begins with Durham's ADA and RA claims. The ADA creates a private cause of action for money damages against a public entity that violates its provisions. *See* 42 U.S.C. § 12133; *United States v. Georgia*, 546 U.S. 151, 154 (2006). State prisons qualify as public entities under the ADA. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). To state a claim under the ADA, Durham must allege that he is "a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019).

The elements of a claim under the RA are the same as under the ADA, except that the plaintiff must also show that the program in question received federal funds. *Durham I*, 82 F.4th

at 225. Although sovereign immunity does not bar suit against state entities under the RA, it bars ADA suits against state entities except where a plaintiff successfully alleges constitutional violations arising from the same conduct. *Id.* at 228–29; *Koslow v. Pennsylvania*, 302 F.3d 161, 172 (3d Cir. 2002).

Here, Durham alleges that he suffers from a serious spinal condition that substantially limits his ability to walk, that he was issued a cane as a mobility aid, and that Defendants refused to permit him to bring that cane into the mess hall despite Durham putting them on notice of his need to use his cane through inquiries and grievances. (Complaint ¶¶ 23–24, 27–35, 58.) Because of that denial, Durham was allegedly forced to ambulate without the cane, fell, and required medical treatment. Durham presses that medical and custody staff refused his alternative request that meals be delivered to his housing unit and that, even after his fall, Defendants still failed to accommodate his disability.

**1. The Proper Defendants**

The Court will dismiss the ADA and RA claims against NJSP, which is a facility within the New Jersey Department of Corrections ("NJDOC") and is not a separate entity subject to suit. *See Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989); *see also Defreitas v. Montgomery Cnty. Corr. Facility*, 525 F. App'x 170, 172 (3d Cir. 2013) (affirming dismissal of ADA claim against correctional facility as a non-suable sub-unit of the county). Considering Durham's *pro se* status, the Court liberally construes the Complaint to name NJDOC as a Defendant. *See Durham II*, 2026 WL 2937333, at *4 (liberally construing Durham's complaint to include NJDOC). Because NJDOC is mentioned in the Complaint, is the public entity responsible for the operation of NJSP and the alleged denial of access to prison programs, and allegedly

receives federal funds, the Court will permit Count One to proceed against NJDOC. (Complaint ¶¶ 3, 61, 75, 87, 90.)[3]

Count One also names UCHC, which provides medical care at NJSP and receives federal funding. (Complaint ¶¶ 5, 76–80.) Such allegations against UCHC suffice under the RA at this stage. *See Montanez v. Price*, 154 F.4th 127, 145–46 (3d Cir. 2025) (holding that a prison medical contractor alleged to be an indirect recipient of federal funds was a proper defendant under § 504 of the RA). And because UCHC is a unit of Rutgers, The State University of New Jersey, which by statute is "the instrumentality of the state," N.J. Stat. Ann. § 18A:65-2, UCHC is also a public entity subject to Title II. *See* 42 U.S.C. § 12131(1)(B).

### 2. Durham States an ADA and RA Claim

At this stage, Durham plausibly alleges each element of an ADA and RA claim. "To state a claim for disability-based discrimination, [Durham] must show that: (1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or other activities for which a public entity is responsible, or was otherwise subjected to discrimination by a public entity; (4) by reason of his disability." *Montanez*, 154 F.4th at 146.

The first two elements are met. Durham is a qualified individual with a disability. *See Durham I*, 82 F.4th at 225 (holding that Durham's lumbar stenosis diagnosis and cane prescription demonstrated a disability). Meals, like showers, are a service the prison provides, because

[3] Durham does not appear to bring the ADA and RA claims against the Individual Defendants. Such claims would likely be subject to dismissal because "individuals are not liable under Titles I and II of the ADA." *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002). The same reasoning applies to the RA. *See id.* at 190 (holding that individual defendants were not liable under the RA because they did not receive federal financial assistance); *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 804 (3d Cir. 2007) (en banc) (discussing that RA suits may be brought "against recipients of federal financial assistance, but not against individuals").

"service, program, or activity" is "extremely broad in scope and includes anything a public entity does." *Furgess*, 933 F.3d at 289 (citation modified); *see Montanez*, 154 F.4th at 147–48 (describing meals, medical care, showers, and toilets as qualifying prison services for ADA and RA claims).

Durham also adequately alleges prongs three (exclusion) and four (discrimination by reason of disability, here a failure to reasonably accommodate). A plaintiff can satisfy the fourth element "by showing invidious discrimination or a failure to provide reasonable accommodations." *Montanez,* 154 F.4th at 148. Denying an inmate access to a necessary assistive device can effectively exclude the inmate from participation in a prison program, even where the program is nominally "available." *See Furgess*, 933 F.3d at 289–91; *Durham I*, 82 F.4th at 226 ("Refusing to make reasonable accommodations is tantamount to denying access."). Here, Durham alleges that he asked, repeatedly and in writing, either to bring his cane into the mess hall or to have his meals delivered to his unit; that custody staff refused the first and medical staff the second, each pointing to the other; and that Sears promised delivery after the fall but never provided it. (Complaint ¶¶ 18–39, 54–57.) Those allegations plausibly amount to a denial of meaningful access to meals "on the same basis as other inmates." *Durham I*, 82 F.4th at 226.

As for reasonable accommodation, Durham was offered the alternative of moving to a double-lock unit to get his meals delivered. Durham alleges that moving to a double-lock unit conditioned his meals on surrendering his current housing, which he claims is unreasonable. Durham also received Major Sears's assurance of in-unit meal delivery, which perhaps could have served as a reasonable accommodation. But the meal delivery never happened. Nevertheless, whether the alternative offered was reasonable and effective cannot be resolved on the pleadings. Durham meets all elements for his ADA and RA claim.

### 3. Compensatory Damages and Sovereign Immunity

Durham also plausibly alleges intentional discrimination sufficient to support a claim for compensatory damages. Intentional discrimination may be shown by deliberate indifference, which requires (1) knowledge that a federally protected right is substantially likely to be violated, and (2) a failure to act despite that knowledge. *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). Durham alleges he told custody and medical staff that he needed either his cane in the mess hall or his meals on his unit and that every request was refused or ignored. Durham also alleges the foreseeable harm (his fall) that could and did result from denying him his cane to ambulate, leaving him without a way to reach his meals. At the screening stage, Durham has sufficiently pleaded both elements of intentional discrimination by deliberate indifference.

Sovereign immunity does not bar Durham's damages claims at this stage. Because NJDOC accepts federal funds, it has waived its immunity from RA claims. *See Koslow*, 302 F.3d at 171–72 ("[I]f a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for [RA] claims against the department or agency—but only against that department or agency."). And as explained below, because "Durham alleges violations of both [the ADA] and the Eighth Amendment arising from the same conduct," "his parallel claims for money damages" may proceed. *Durham I*, 82 F.4th at 229. The Court assumes for purposes of this screening that UCHC does not share the State's immunity because Rutgers is not an arm of the State. *See Kovats v. Rutgers, The State Univ.*, 822 F.2d 1303, 1312 (3d Cir. 1987) (concluding that "a majority of the relevant criteria weigh against considering Rutgers an arm of the state entitled to Eleventh Amendment immunity"). Thus, Count One shall proceed against NJDOC and UCHC and will be dismissed with prejudice as to NJSP.

**C. Section 1983 and State Law Claims Against NJSP**

Claims under § 1983 may only be brought against "persons" or municipalities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). And neither a state nor its agencies are "persons" under § 1983. *Will*, 491 U.S. at 70–71. Thus, because NJSP—a state correctional facility that is an arm of the State—is not a "person" subject to suit under § 1983, Counts Two and Three are dismissed with prejudice as to NJSP. To the extent Durham sues any individual defendant in their official capacity for damages, those claims are likewise dismissed with prejudice. *See Durham I*, 82 F.4th at 224 (explaining that state officers sued in their official capacities for retrospective relief are not "persons" subject to suit under § 1983).

Durham's state law claims against NJSP also fail because Eleventh Amendment immunity extends to state law claims against the State in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 121 (1984). NJSP is an extension of the State of New Jersey because the "funds for any judgment against defendants would come from appropriations paid into the state treasury." *Grabow*, 726 F. Supp. at 539. Moreover, the New Jersey Tort Claims Act does not waive Eleventh Amendment immunity in federal court; it provides only a limited waiver of immunity for suits in state court. *See Allen v. N.J. State Police*, 974 F.3d 497, 505–06 (3d Cir. 2020). The NJLAD likewise does not waive Eleventh Amendment immunity. *See Garcia v. Richard Stockton Coll. of N.J.*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002). Thus, Durham's state law claims may not proceed against NJSP in federal court. Counts Four, Five, Six, and Nine will be dismissed without prejudice as to NJSP.

**D. State Law Claims Against the Individual Defendants and UCHC**

Durham's remaining state law claims run against the Individual Defendants and UCHC. The Court has supplemental jurisdiction over them because they arise from the same events as his

federal claims. *See* 28 U.S.C. § 1367(a). Liberally construed, the Complaint states claims for negligence, negligent infliction of emotional distress, medical malpractice, and disability discrimination under the NJLAD.

### 1. Negligence and Negligent Infliction of Emotional Distress

Durham brings claims for negligent infliction of emotional distress and negligence against the Individual Defendants and UCHC. Under New Jersey law, a claim for negligence requires allegations of a duty, breach, proximate causation, and damages. *Townsend v. Pierre*, 221 N.J. 36, 51 (2015). Negligent infliction of emotional distress is a form of negligence liability: "negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (1989). The distress must be "genuine and substantial." *Id.* at 430.

Durham alleges that Defendants knew of his spinal condition and his need for a cane; that custody staff barred the cane from the mess hall while medical staff refused to deliver his meals; and that as a result he fell, spent three days in the infirmary, missed about 95 meals, and lost about 40 pounds. Those allegations plausibly plead a duty of reasonable care, its breach, and resulting physical injury. They also plausibly plead genuine and substantial distress tied to that injury. Durham alleges that he was made to choose, meal after meal, between walking without his cane and going hungry. As a result, the walk ended in a fall and "excruciating" pain, causing him to suffer "extreme distress." (Complaint ¶¶ 50, 83, 96.) Construed liberally, the Complaint plausibly alleges claims for negligence and negligent infliction of emotional distress. The Court will permit Counts Four and Six to proceed against the Individual Defendants and UCHC.

### 2. Intentional Infliction of Emotional Distress

Count Five alleges that Defendants "intentionally" and "maliciously" caused Durham harm. (Complaint ¶¶ 102–06.) New Jersey recognizes no tort by that name, and the Court liberally construes Count Five as a claim for intentional infliction of emotional distress. That tort requires (1) intentional or reckless conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," (2) proximate cause, and (3) emotional distress "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366–67 (1988) (citation omitted).

Durham fails to properly plead sufficient emotional distress. Durham alleges physical injury and hunger—harms that Durham's negligence and Eighth Amendment claims already reach—but pleads no additional facts suggesting emotional distress of such a severity that no reasonable man could endure. Durham's assertion elsewhere that Defendants caused him "extreme distress," (Complaint ¶ 96), does not, without more, meet this tort's demanding standard. Count Five will therefore be dismissed without prejudice.

### 3. Medical Malpractice and Careless Contractual Work

Durham alleges that Dr. Staller and APN Teh, and UCHC through them, deviated from their professional standard of care by repeatedly denying his requests for meals on his unit despite knowing that he could not bring his cane to the mess hall and was missing meals as a result. Under New Jersey law, "a plaintiff in a malpractice action must prove the applicable standard of care; that a deviation has occurred; and that the deviation proximately caused the injury." *Verdicchio v. Ricca*, 179 N.J. 1, 23 (2004) (citations omitted). Construed liberally, Durham's allegations state a claim for professional negligence at this stage. Count Seven may therefore proceed against UCHC, Dr. Staller, and APN Teh.

Count Eight, for "careless contractual work injuring other[s]," alleges that the same Defendants failed to perform their work with reasonable care and that Durham went hungry and lost weight as a result. (Complaint ¶¶ 111–12.) It identifies no cause of action distinct from Counts Six and Seven and adds no facts. Count Eight will be dismissed without prejudice as duplicative.

**4. The NJLAD**

The NJLAD guarantees all persons the opportunity to obtain the accommodations, advantages, facilities, and privileges of any place of public accommodation without discrimination because of disability. N.J. Stat. Ann. § 10:5-4. The NJLAD makes it unlawful for "any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation" to deny a person those accommodations, advantages, facilities, or privileges on account of disability, *id.* § 10:5-12(f)(1), and for "any person, whether an employer or an employee or not," to aid, abet, incite, compel, or coerce such a violation, *id.* § 10:5-12(e).

New Jersey courts treat governmental agencies and the officers who staff them as places of public accommodation under the NJLAD. *See Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 348 (App. Div. 2004). "Courts interpreting New Jersey law have found that prisons are places of public accommodation under [the] NJLAD." *Santiago v. Elchebli*, Civ. No. 20-650, 2021 WL 4473179, at *5 (D.N.J. Sept. 30, 2021) (collecting cases). To state a claim under the NJLAD, Durham must demonstrate that: (1) he is a member of a protected class; (2) the defendants' actions were motivated by discrimination; and (3) others outside the protected class did not suffer similar adverse actions. *Id.* at *6 (citation omitted). Durham demonstrates all three elements.

Durham plausibly alleges membership in a protected class because of his disability. For the second element, Durham must "allege facts sufficient to create an inference that discrimination motiv[at]ed Defendants' actions." *Id.* Durham has done so at this early screening stage. He

alleges that officers turned him away from the mess hall because of his need for a cane and that supervisors upheld the ban after he complained. In addition, medical staff and Major Sears declined or failed to provide meals another way. Because the only alleged reason for excluding him was the mobility aid his disability requires, those allegations permit a reasonable inference that he was denied access "on account of" his disability. *See* N.J. Stat. Ann. § 10:5-12(f)(1). As to the third element, Durham alleges that inmates without disabilities eat in the mess hall without having to move to a double-lock unit, while he had to risk injury each time he walked there without his cane. (Complaint ¶¶ 69, 83.) And because the public accommodation provision applies by its terms to any "agent, or employee" of a place of public accommodation, N.J. Stat. Ann. § 10:5-12(f)(1), the Court declines to limit Count Nine to supervisors on screening. At this stage, Count Nine may proceed against the Individual Defendants and UCHC.

### E. Section 1983 Claims Against the Individual Defendants and UCHC

Durham brings two claims under § 1983 against the Individual Defendants and UCHC: an equal protection claim (Count Two) and an Eighth Amendment claim (Count Three). Each Defendant is liable only for their own conduct; liability under § 1983 cannot rest on respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

#### 1. UCHC

Because UCHC is an entity, it is liable only if its own policy or custom caused the violation. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). Durham alleges only that UCHC did not answer his letters and that meals on the tier required approval from the medical department. (Complaint ¶¶ 76–79, 91.) He does not allege a UCHC policy or custom that caused Dr. Staller's or APN Teh's refusals. Counts Two and Three will therefore be dismissed without prejudice as to UCHC.

### 2. Equal Protection Claim Against Individual Defendants

Durham alleges that Defendants discriminated against him because of his disability. But disability is not a suspect or quasi-suspect classification, so his claim is reviewed for a rational basis. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442–46 (1985). And to the extent Count Two rests on a "class of one" theory, the inquiry is the same. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Durham must allege that (1) a defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Others are similarly situated when they are alike "in all relevant respects." *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Durham's first comparison, to inmates without disabilities who need not be double-locked to eat—that is, housed with a cellmate—fails because those inmates need no cane.

Durham's second comparison, however, states a claim against Dr. Staller and APN Teh. According to Durham, there is another inmate in his unit who walks with a cane and has meals delivered. That inmate is like Durham in every respect that matters here: the same unit, the same mess hall, and the same excluded mobility aid. Meal delivery required a "medical lay in." (ECF No. 1-2 at 11.) Dr. Staller and APN Teh refused Durham's requests for a medical lay in that would allow in-unit meals to be delivered. Dr. Staller explained that if he granted Durham's request, he would "have to do it for everyone else." (Complaint ¶ 21.) APN Teh told Durham that "this is not a hotel this is prison." (*Id.* ¶ 36.)

Read liberally, the Complaint alleges that the providers who decided lay-ins granted one to a cane-using inmate and intentionally refused one to Durham. *See Rivera v. Monko*, 37 F.4th 909, 917 (3d Cir. 2022) (treating *pro se* prisoner's allegation that officers were "responsible for

the upkeep and maintenance of the law library research computers" as factual and inferring that responsibility from their roles). Durham need not know which provider approved the other delivery because that detail lies in records he does not control. *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016). Nor does the Complaint suggest a rational basis for the difference. Dr. Staller's reason is belied by the other inmate's delivery, APN Teh's is unrelated to medical need, and nothing suggests that the inmates' medical needs differed.

No other Individual Defendant is alleged to have decided who received meals on the tier. Count Two therefore proceeds against Dr. Staller and APN Teh and will be dismissed without prejudice as to the other Individual Defendants.

### 3. Eighth Amendment Claim Against Individual Defendants

In Count Three, Durham alleges that the Individual Defendants and UCHC were deliberately indifferent in barring Durham's cane from the mess hall and refusing to deliver his meals. (Complaint ¶¶ 86–94.) The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate food and medical care, and to take reasonable measures to guarantee inmate safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). A prison official "may not be held liable unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp. 2d 702, 719–20 (D.N.J. 2013) (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)). Objectively, "whether the deprivation of food falls below this constitutional threshold depends on the amount and duration of the deprivation." *Id.* at 720 (citation modified). Subjectively, Durham must establish that the Individual Defendants and UCHC were "aware of the alleged conditions and failed to reasonably respond to them." *Id.* at 721 (citing *Farmer*, 511 U.S. at 829, 842).

Durham satisfies both components. The objective component is met because Durham was barred from bringing his cane and was refused delivery to his unit, causing him to miss around 95 meals and lose around 40 pounds. (Complaint ¶¶ 59–60, 73.)

The subjective component is also met as to every Individual Defendant except Major Sears. Dr. Staller and APN Teh refused to deliver Durham's meals after he told them he was missing meals because canes were barred from the mess hall; in response, they gave reasons unrelated to Durham's medical needs. *See Durham I*, 82 F.4th at 230 (holding that Durham alleged deliberate indifference when he was denied his cane and then fell and injured himself in the shower). Lieutenant Crawford and Associate Administrator Gangi denied grievances in which Durham reported missing meals. And Associate Administrator Gangi did so even after learning that the medical department had refused Durham's request to get his meals delivered. They decided Durham's requests while the alleged deprivation was ongoing—not after the fact. *See Sutton v. Rasheed*, 323 F.3d 236, 249–50 (3d Cir. 2003) (per curiam) (holding that an official who denied a grievance appeal "played an active role"). Officers Soto and Bradshaw and the two John Doe officers enforced the ban even after Durham told them he needed the cane to walk, leaving him to walk to meals without it or not eat. (Complaint ¶¶ 41–47, 88–89.) The obvious risk of potential harm by requiring Durham to walk without his cane supports an inference that they knew of the alleged deprivation. *See Farmer*, 511 U.S. at 842.

The allegations against Major Sears are different. After learning of Durham's fall, he told Durham twice that meals would be brought to his unit if he could not walk to the mess hall without his cane. (ECF No. 1-2 at 18.) Durham alleges that the meals never arrived. But he does not allege that Major Sears was aware of that. Without that knowledge, Major Sears's failure to follow

through is at most negligence. *See Farmer*, 511 U.S. at 835. And an official who responds reasonably to a known risk is not liable "even if the harm ultimately was not averted." *Id.* at 844.

Count Three therefore proceeds against Associate Administrator Gangi, Lieutenant Crawford, Dr. Staller, APN Teh, Officers Soto and Bradshaw, and the two John Doe officers, and will be dismissed without prejudice as to Major Sears.

It is THEREFORE, on this 24th day of November 2026,

ORDERED that the ADA and RA claims in Count One shall PROCEED against the New Jersey Department of Corrections and University Correctional Health Care and are dismissed WITH PREJUDICE as to New Jersey State Prison; and it is further

ORDERED that the Clerk of the Court shall add the New Jersey Department of Corrections as a Defendant in this matter; and it is further

ORDERED that the Equal Protection and Eighth Amendment claims in Counts Two and Three against New Jersey State Prison (and against the Individual Defendants in their official capacities for damages), and the state law claims in Counts Four, Five, Six, and Nine against New Jersey State Prison, are dismissed WITHOUT PREJUDICE; and it is further

ORDERED that the Equal Protection claim in Count Two shall PROCEED against B. Staller and C. Teh and is dismissed WITHOUT PREJUDICE as to all remaining Defendants; and it is further

ORDERED that the Eighth Amendment claim in Count Three shall PROCEED against A. Gangi, M. Crawford, J. Soto, W. Bradshaw, John Does 1 and 2, B. Staller, and C. Teh, and is dismissed WITHOUT PREJUDICE as to University Correctional Health Care and C. Sears; and it is further

ORDERED that the negligent infliction of emotional distress, negligence, and NJLAD claims in Counts Four, Six, and Nine shall PROCEED against A. Gangi, M. Crawford, C. Sears, J. Soto, W. Bradshaw, John Does 1 and 2, B. Staller, C. Teh, and University Correctional Health Care, and the medical malpractice claim in Count Seven shall PROCEED against B. Staller, C. Teh, and University Correctional Health Care; and it is further

ORDERED that Counts Five and Eight are dismissed WITHOUT PREJUDICE; and it is further

ORDERED that, pursuant to the Memorandum of Understanding between the Court and the New Jersey Department of Corrections,[4] the Court shall forward a copy of the Complaint upon the Department and seek a waiver of service for the New Jersey Department of Corrections and Defendants A. Gangi, M. Crawford, C. Sears, J. Soto, and W. Bradshaw; a separate order detailing this process will follow; and it is further

ORDERED that the Clerk of the Court shall provide Durham with USM-285 forms for Defendants UCHC, B. Staller, and C. Teh, who shall be served by the United States Marshals Service upon the return of the completed forms, *see* 28 U.S.C. § 1915(d); and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk of the Court shall notify Durham of the opportunity to apply in writing to the assigned judge for the appointment of pro bono counsel; and it is further

ORDERED that, if at any time prior to the filing of a notice of appearance by a Defendant, Durham seeks the appointment of pro bono counsel or other relief, pursuant to Fed. R. Civ. P. 5(a)

---

[4] The Memorandum of Understanding between all vicinages of the United States District Court for the District of New Jersey and the New Jersey Department of Corrections governs the process for obtaining waiver of service, where possible, of the Department's current and former employees.

and (d), Durham shall (1) serve a copy of the application by regular mail upon each party at his last known address and (2) file a Certificate of Service; and it is further

ORDERED that this matter shall remain ADMINISTRATIVELY TERMINATED for docket management purposes only pending service (or the waiver of service); the Court retains jurisdiction over the case; and it is further

ORDERED that the Clerk of the Court shall serve Durham with a copy of this Memorandum Opinion & Order via regular mail.

ROBERT KIRSCH
United States District Judge